Herman D. LEA

v.

**LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY OF LIVERPOOL, ENGLAND**

and

**The American National Bank & Trust Company of Danville**

and

**South Enterprises, Inc.**

and

**Small Business Administration, an agency of the United States of America.**

**Civ. A. No. 64–C–36.**

United States District Court
W. D. Virginia,
Danville Division.

July 15, 1965.

Charles R. Warren, Jr., Warren, Parker & Williams, and Horace G. Bass, Danville, Va., for Herman D. Lea.

Edward A. Marks, Jr., Sands, Anderson, Marks & Clarke, Richmond, Va., for Liverpool & London & Globe Ins. Co.

Thomas B. Mason, U. S. Atty., Roanoke, Va., for Small Business Administration.

DALTON, Chief Judge.

Liverpool and London and Globe Insurance Company has paid into the Registry of this Court the sum of $24,000.00 representing the proceeds of a certain fire insurance policy on the contents of the Lea Theatre in Danville, Virginia, which were destroyed by fire May 18, 1964.

There are two claimants to the fund, namely, Herman D. Lea and Small Business Administration, an agency of the United States Government.

The claim of plaintiff Lea stems from a loss payable clause attached to the

insurance policy on January 19, 1962, at which time the Insurance Company issued a mortgagee clause, payable first to American National Bank and Trust Company, second, to Herman D. Lea, and third, to American National Bank and Trust Company and Small Business Administration.

The mortgage under which Herman D. Lea claims is dated June 7, 1947 and the indebtedness exceeds the amount of insurance funds available.

The claim of Small Business Administration arises out of a deed of trust dated January 2, 1959 from Leonard W. Lea et al. to secure American National Bank and Trust Company of Danville and Small Business Administration a participating loan in the amount of $60,000.00.

Default was made in the payment of this loan and a foreclosure sale was had on April 30, 1962, which left a deficiency due Small Business Administration of $17,979.26.

▇ Small Business Administration later resold the property for more than enough to cover the deficiency, but the Court is of the opinion that Small Business Administration was within its rights to make a profit on the sale and still assert its deficiency claim.

As background it is noted there was yet another deed of trust on the contents of Lea Theatre, dated March 9, 1948 to secure a debt due American National Bank and Trust Company. This loan was paid in 1951 and released in April 1962.

The insurance policy of Liverpool was issued June 1, 1961, for a term of three years and a loss payable clause was attached to the policy on June 14, 1961, payable first, to American National Bank and Trust Company, second, to Small Business Administration, as their interests may appear. Leonard W. Lea, President of Lea Theatre, obtained the insurance policy in the first instance, and apparently the loss payable clause of June 14, 1961 was attached at the request of the American Bank.

Leonard W. Lea, sometime between June 14, 1961 and January 19, 1962, observed the loss payable clause of June 14 and discovering that Herman D. Lea, who held the first deed of trust, was not mentioned, requested the insurance agent to add Herman's Lea's name to the loss payable clause, and in consequence of the request the insurance company issued an endorsement to the policy naming American Bank first, Herman D. Lea second, and American Bank and Small Business Administration third on the loss payable clause, and the Court is satisfied from the evidence that the agent mailed a copy to each of the parties. This was the mortgagee clause in effect when the fire occurred on May 18, 1964.

The question that is now presented is whether Herman D. Lea, the holder of the first deed of trust (June 7, 1947), or the Small Business Administration, holder of the second deed of trust (January 2, 1959), (the American Bank's deed of trust having been paid) is entitled to the insurance proceeds of $24,000 paid into Court.

▇▇ The Court holds that Herman D. Lea is entitled to the fund, and for these reasons:

(1) This is in accordance with the insurance policy and the last endorsement (January 19, 1962) which were in effect at the time of the fire. The Court finds as a fact from the evidence, direct and circumstantial, together with reasonable inferences to be drawn therefrom, that notice of the change in the endorsement as to ownership and as to loss payable benefits was duly sent to all parties in interest, and that no protest or objection was made to such change.

In fact, there could hardly have been any objection because the endorsement of January 19 was in accordance with the true rights and priority of the parties.

Moreover, the Court finds that American Bank received notice of the January 19, 1962 change in the loss payable endorsement, and American Bank being a jointly named mortgagee with Small Busi-

ness Administration, the Court holds that notice to one participating in the loan, who was charged with the handling of the details of the loan, was notice to both participants.

(2) The change in the policy and mortgagee endorsement of January 19, 1962 was in accordance with the true priorities of the claims. It listed the three beneficiaries in the order of their priority at law had there been no endorsement other than a general endorsement to pay the mortgagees as their respective interests may appear.

At the time of the January 19, 1962 endorsement American Bank held a first lien, Herman D. Lea had the lien second to American Bank, and American Bank and Small Business Administration jointly held the third lien.

After the American Bank's lien was released in April 1962 this moved Herman D. Lea to first place and American and Small Business Administration, second, and this was the position of the parties when the fire occurred, and equity would certainly call for payment of the proceeds in the order of priority at law.

(3) Small Business Administration apparently was not relying on any protection from the insurance policy, because on February 12, 1964 it wrote the insurance agency requesting that the policy be cancelled and remittance made of the unearned premiums to Small Business Administration. Bear in mind, Small Business Administration did not purchase the policy or pay any premiums thereon. As a matter of fact, Mr. Lumsden of Small Business Administration's Loan Liquidation and Service Department states:

(Tr. 63) "Q With that policy and loss payable clause before you, did you still consider that there was a prior lien so far as this insurance policy was concerned on the property covered by that policy?

A We considered that Mr. Lea had a prior lien."

\* \* \* . \* \* \*

(Tr. 64) "Q You didn't consider the rights at all of Small Business Administration so far as that policy was concerned, to this property in the Lea Theater?

A No, because it was our understanding that Mr. Lea's deed of trust was ahead of Small Business Administration."

\* \* \* \* \*

(Tr. 65) "Q In other words, if I understand you correctly, as of the date of that letter, the Small Business Administration really felt that they had no property securing that loan?

A We had no equity in property securing our loan.

Q All of the equity belonged to Mr. Herman Lea, really?

A Yes.

Q That was your position?

A That's correct."

\* \* \* \* \* \*

(Tr. 67) "Q And all the way through, they recognized the priority of Mr. Herman Lea's right to the security listed, haven't they?

A Yes, sir."

(4) Clearly, the endorsement of June 14, 1961 was made through inadvertent error or mistake. The 1948 deed of trust to American Bank had been paid in 1961 (although not released until April 1962) and American Bank was not entitled to a position of first place in the loss payable clause endorsement. When the error was discovered by Leonard W. Lea he had the error corrected, as it should have been. Leonard W. Lea purchased the policy and paid the premiums. The record does not satisfactorily show who directed the manner in which the June 1, 1961 loss payable endorsement was to be made, but most likely it was the

American Bank. The record is clear, however, that when Leonard W. Lea discovered the error he set about to correct it.

Let us assume that there had been no fire in May 1964, and that all had gone well to the present time and that now in June 1965 Leonard Lea wants to change the loss payable clause endorsement. Could he not go to the agent where he (paid his Lea) money for the policy and obtain an endorsement that spelled the truth as to the priority of the lien holders? Certainly, he should have had that right on January 19, 1962, and the Court cannot imagine that there was any duty on Leonard Lea to follow the loss payable clause to Richmond or Washington. All that he should reasonably be accountable for was the giving of the true facts as to priority to the insurance agency, and it was then up to the insurance agency to send out the notices, which they say was done in the usual course of their business. The best evidence is that notice was forwarded to all parties in interest in the usual course of business. Even if notice was sent to only one of the participants in the Small Business Administration loan, that is to American Bank, this the Court holds was notice to Small Business Administration.

Leonard W. Lea was the one who made the insurance contract with the insurance company. Someone other than Leonard Lea (most probably American Bank) provided the insurance agency with the erroneous information leading to the loss payable clause endorsement of June 14, 1961. Leonard W. Lea upon learning of the mistake communicated with the insurance agency and corrected it by the loss payable clause endorsement of January 19, 1962.

This was in keeping with what to the Court seems the right and justice of the case, and the Court therefore awards the insurance proceeds to Herman D. Lea. An order will be entered to that effect.